[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on May 24, 1993 in Stanger, South Africa.
All jurisdictional requirements have been met.
The marriage of the parties has broken down irretrievably and the same is hereby dissolved.
The court has considered all the statutory criteria contained in Connecticut General Statutes Sections 46b-81 and 46b-82, and enters the following orders:
Each of the parties testified that prior to their marriage in CT Page 9362 South Africa, they executed, by persons holding powers of attorney, an antenuptial agreement. The agreement was intended to give effect to their religious beliefs by opting out of the community property provisions of South African marital law. The defendant urges that the Court reject its provisions, citingMcHugh v. McHugh, 181 Conn. 482 (1980). The Plaintiff urges the court to apply South African law and uphold the agreement, and cites Elgar v. Elgar, 238 Conn. 839 (1996).
Neither of the parties can identify the signatures on the document, but there is no question that the offered document contains the terms agreed to by the parties, and that both of them believe this to be their antenuptial agreement. In light of these facts, the authentication problem raised by the defendant should not stand in the way of reaching the substantive issues presented by the agreement. While it is true that the document cannot be formally authenticated, the defendant does not go so far as to argue that it is not the agreement. Authentication is normally required to give a document reliability; here there is no question, by either party, regarding the reliability of the document. No purpose would be served by honoring the formal requirement of authentication under circumstances such as these.
In Elgar, the court recognized there might be a conflict of laws problem inherent in the application of antenuptial agreements entered into in forums other than the site of the dissolution, and spelled out the balancing test required by the Restatement of Conflict of Laws. Id. at 850. Where the parties have not made an election of laws themselves, a court must look to the tests spelled out in Section 188 of the Restatement of Conflicts of Law (Second).
Here, the parties entered into the contract in South Africa. The plaintiff, while a native of South Africa is a citizen of the United States. The defendant is a citizen of South Africa and subsequent to her marriage became a resident alien in the United States. It is not disputed that the purpose of the agreement was to comply with principles of Muslim law held by both parties. The location of the subject matter of the contract is Connecticut and that is the parties' domicile. The parties knew, at the time of the agreement that they would be living in Connecticut. The policies of the two forums differ in some manners. Here, there must be financial disclosure before an antenuptial agreement will be given effect; in South Africa the laws acknowledge that certain agreements are entered into with out financial disclosure CT Page 9363 because they are designed to give effect to religious beliefs. Such is the situation here. The defendant had a law degree in South Africa, her lawyers drew the agreement. There is no dispute that it was designed to give effect to mutually held religious beliefs. Now, the defendant urges that McHugh's requirement for financial disclosure should take priorty.
The protection of the justified expectations of the parties should take precedence over the imposition of Connecticut law on a marriage negotiated and entered into under a South African law allowing for recognition of religious principles. While Connecticut has an interest because the parties live here and the marriage, while short existed here, that interest does not, in this case, outweigh the interest in the parties in their jointly held expectations, certainty, and predictability. This is especially so because of the short duration of the marriage, and the purpose of the antenuptial agreement. While it is true that the defendant now lives in the United States, that was always her intention, and, with the failure of her marriage, has chosen to stay here rather than return home. It would be unfair to apply the McHugh requirement of financial disclosure to an agreement mutually sought to honor deeply held religious beliefs. The agreement should be upheld.
The agreement, though, speaks only of the waiver of interests in community property. There is no waiver of the right of continuing maintenance or alimony available to the parties under South African law. The agreement should not be read to include more than its terms cover. Therefore, while the court may not make orders of property distribution, it can make awards of alimony under C.G.S. Sec. 46b-82. Here, the defendant travelled to the United States and found a life different than the one she envisioned. She had been independent and running a family business in South Africa. Here she was without transportation and thus not able to work. The defendant believed that she would continue her life as an independent modern woman. Indeed, this and other differences in expectations between the parties led to the breakdown of the marriage.
Today the plaintiff is a retail manager. She is in debt because she was left without support when the plaintiff left her. Given the statutory criteria, it is appropriate, given the length of the marriage, that the wife be awarded rehabilitative alimony in order to allow her to make the transition to single life. CT Page 9364
1. The plaintiff shall pay to the defendant as alimony, $120.00 per week until the death of either party, the remarriage of the defendant, her cohabitation, or October 31, 1998, whichever shall sooner occur. This order is non-modifiable as to amount or duration.
2. The plaintiff shall nominate the plaintiff as beneficiary of a sufficient amount of his life insurance policy to secure the award.
3. Each of the parties shall retain the assets and liabilities listed on their respective financial affidavits.
GORDON, J.